Paul M. Basta, P.C.
Jonathan S. Henes, P.C.
Christopher Marcus, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

James H.M. Sprayregen, P.C.
Ryan Blaine Bennett (admitted *pro hac vice*)
Brad Weiland (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

Mark McKane, P.C. (*pro hac vice admission pending*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
555 California Street
San Francisco, California 94104
Telephone:    (415) 439-1400
Facsimile:    (415) 439-1500

Anna Rotman (*pro hac vice admission pending*)
Nicolas Thompson (*pro hac vice admission pending*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
600 Travis Street
Houston, Texas 77002
Telephone:    (713) 835-3600
Facsimile:    (713) 835-3601

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| SABINE OIL & GAS CORPORATION, *et al.*,[1] | ) | Case No. 15-11835 (SCC) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Sabine Oil & Gas Corporation (4900); Giant Gas Gathering LLC (3438); Sabine Bear Paw Basin LLC (2656); Sabine East Texas Basin LLC (8931); Sabine Mid-Continent Gathering LLC (6085); Sabine Mid-Continent LLC (6939); Sabine Oil & Gas Finance Corporation (2567); Sabine South Texas Gathering LLC (1749); Sabine South Texas LLC (5616); and Sabine Williston Basin LLC (4440).  The location of Debtor Sabine Oil & Gas Corporation's corporate headquarters and the Debtors' service address is:  1415 Louisiana, Suite 1600, Houston, Texas 77002.

|  | ) |  |
|---|---|---|
| SABINE OIL & GAS CORPORATION, *et al.*,[2] | ) | Adversary No. 16-01043 (SCC) |
|  | ) |  |
| Plaintiffs. | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| NORDHEIM EAGLE FORD GATHERING, LLC, | ) |  |
| Defendant. | ) |  |
|  | ) |  |

**DEBTORS' MEMORANDUM IN OPPOSITION TO NORDHEIM EAGLE FORD
GATHERING LLC'S EMERGENCY MOTION FOR STAY PENDING APPEAL**

The above-captioned Debtors and Debtors in Possession (collectively, the "Debtors")

respectfully submit this memorandum in opposition to the *Motion for Stay Pending Appeal*, ECF

No. 1099, and the *Motion for Stay of Final Order Pending Appeal*, Case No. 16-1043, ECF No.

29, (collectively, the "Motions") filed by Nordheim Eagle Ford Gathering LLC ("Nordheim"),

which ask this Court to stay the *Order Authorizing Rejection of Certain Executory Contracts*,

ECF No. 1082 (the "Rejection Order") and the *Order on Debtors' Motion for Summary

Judgment and Nordheim's Motion for Judgment on the Pleadings*, Case No. 16-1043, ECF No.

22 (the "Summary Judgment Order" and, collectively, the "Orders"), pending appeal.[3]   In

support of their opposition, the Debtors state as follows:

---

[2]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax
identification number, include:  Sabine Oil & Gas Corporation (4900); Giant Gas Gathering LLC (3438); Sabine
Bear Paw Basin LLC (2656); Sabine East Texas Basin LLC (8931); Sabine Mid-Continent Gathering LLC
(6085); Sabine Mid-Continent LLC (6939); Sabine Oil & Gas Finance Corporation (2567); Sabine South Texas
Gathering LLC (1749); Sabine South Texas LLC (5616); and Sabine Williston Basin LLC (4440).  The location of
Debtor Sabine Oil & Gas Corporation's corporate headquarters and the Debtors' service address is:  1415 Louisiana,
Suite 1600, Houston, Texas 77002.

[3]    References to ECF-filed documents refer to case number 15-11835 unless otherwise specified.

## PRELIMINARY STATEMENT

This Court should deny the Motions for a stay pending appeal because Nordheim has not come close to satisfying the heavy burden necessary to justify such extraordinary relief. In particular, the Motions do not satisfy any—let alone all—of the four requirements for such relief.

*First*, Nordheim has not established that it will be irreparably injured absent a stay. Under its Gathering Agreements with Sabine, Nordheim has the right to receive certain minimum amounts of gas and condensate per year; if Sabine does not deliver those minimum amounts each year, Nordheim has the right to receive deficiency payments. In light of those Agreements, it is not only possible but straightforward to calculate Nordheim's money damages; this is the quintessential breach for which such a remedy is adequate (and thus a stay is unwarranted). Nordheim cannot avoid that point by arguing (notwithstanding this Court's ruling on the merits) that the Agreements created a real property interest: that argument has no bearing on the adequacy of money damages here. Nor can Nordheim avoid that point by arguing that the Debtors are insolvent. Putting aside the fact that the Debtors' financial situation is likely to be better, not worse, at the end of the bankruptcy than now, a debtor's insolvency does not automatically create irreparable harm for a counterparty to a rejected contract (and, if it did, such a party would almost always be entitled to a stay pending appeal, which is not the law).

*Second*, Nordheim incorrectly asserts that a stay would not injure the Debtors because they "freely entered into the Gathering Agreements," and a stay would place them "in no worse position than [they] occupied prior to" the Rejection Order. Stay Mot. ¶¶ 19-20. Neither assertion makes sense. As an initial matter, the Bankruptcy Code specifically authorizes debtors to reject non-coercive, unfavorable contracts; that the Debtors here previously agreed to unfavorable terms is not grounds to stay a court order permitting rejection. And the truism that a stay pending appeal would leave the Debtors no worse than they were before the Rejection Order

proves nothing, because the whole point of that Order was to free the Debtors from onerous pre-petition contractual obligations, so keeping such obligations in place would clearly injure them.

*Third*, Nordheim has not shown a "substantial possibility" of success on appeal. Nordheim argues only that there is a "lack of binding authority" and "conflicting indications in Texas case law" on key issues. Stay Mot. ¶ 37. The Debtors disagree, but there is no need for extensive rehashing of the substantive briefing already before the Court. Even if Nordheim were correct that "a reviewing court could ... reasonably differ in its conclusion," *id.* ¶ 28, Nordheim cannot carry its burden by arguing that reasonable minds can differ or that an appeal would be a coin flip.

*Fourth*, the public interest supports the Debtors, as the public has an interest in efficient, predictable bankruptcy proceedings conducted according to well-established rules. Nordheim's jeremiad that the Orders "threaten the contractual framework on which the midstream gas gathering and delivery industry relies," Stay Mot. ¶ 38, ignores that the Court's decisions do not purport to set rules for that industry. Instead, the Court entered the Orders after careful consideration of the Gathering Agreements' terms, including the ways those terms differ from terms at issue in other cases. Whether similar orders are entered in other proceedings will depend on the contracts at issue in those cases. The public does not have an interest in Nordheim's quixotic effort to bind the Debtors to the Gathering Agreements.

## BACKGROUND

The Debtors filed their petitions for relief under Chapter 11 of the Bankruptcy Code on July 15, 2015. They continue to operate their businesses and manage their properties as debtors in possession pursuant to Sections 1107(a) and 1108 of the Code. This Court approved the Debtors' Disclosure Statement on May 3, 2016, and the confirmation hearing is set to begin on June 13, 2016. ECF No. 1095.

On September 30, 2015, the Debtors filed a motion to reject certain executory contracts, among them the Gathering Agreements between Sabine and Nordheim.  ECF No. 371.  The Gathering Agreements obligate Sabine to deliver certain minimum amounts of gas and condensate to Nordheim on an annual basis, pay annual gathering fees to Nordheim for the services provided thereunder, and, if Sabine does not deliver the requisite amount of gas or condensate each year, make deficiency payments to Nordheim on an annual basis.  ECF No. 872 at 2-3.

Nordheim objected to Sabine's motion on October 8, 2015.  ECF No. 387.  Nordheim argued that rejecting the Gathering Agreements would not benefit the estate because their key covenants ran with the land and therefore could not be rejected.  *Id*.  After the Debtors and Nordheim each filed reply papers, ECF Nos. 410, 676, 742, the Court heard oral argument on Debtors' motion on February 2, 2016.

Five weeks later, the Court issued a Bench Decision on the Debtors' motion.  ECF No. 872 (the "Rejection Decision").  The Court held that the Debtors had "properly and adequately considered the business and legal risks associated with rejection of the" Gathering Agreements and accordingly relieved the Debtors of the terms in those agreements that were subject to rejection.  *Id*. at 9.  The Court did not, however, decide whether the covenants at issue ran with the land because the Court determined it would have been procedurally improper to do so on a motion to reject.  *Id*. at 7, 9.  Instead, the Court included in its decision a non-binding analysis concluding that the covenants did not run with the land.  *Id*. at 9-18.

Ten days later, the Debtors filed an adversary case against Nordheim seeking a declaratory judgment that the covenants at issue in the Gathering Agreements do not run with the land.  Case No. 16-1043, ECF No. 1.  Nordheim answered and counterclaimed on April 4, 2016.

Case No. 16-1043, ECF No. 5.   Nordheim asked the Court to declare that (1) the Gathering

Agreements contain real covenants that "run with the land"; or (2) in the alternative, the

Gathering Agreements contain covenants that are equitable servitudes that run with the land.   *Id*.

Nordheim also filed a motion requesting that the Court enter judgment on the pleadings in its

favor.   Case No. 16-1043, ECF No. 7.   The Debtors responded by filing a motion for summary

judgment asking the Court to, in relevant part, (1) enter summary judgment for the Debtors on

their declaratory judgment claims against Nordheim; (2) enter summary judgment for the

Debtors on Nordheim's declaratory judgment counterclaims; and (3) deny Nordheim's motion.

Case No. 16-1043, ECF No. 11.   The parties' cross motions were fully briefed on April 19, 2016.

The Court issued a ruling granting the Debtors' motion for summary judgment and

denying Nordheim's motion for judgment on the pleadings on May 3, 2016.   ECF No. 1063 (the

"Summary Judgment Decision").   The Court held that the Gathering Agreements do not run with

the land as either real covenants or equitable servitudes.   *Id*.   With respect to whether the

Gathering Agreements run with the land as real covenants, the Court found that they do not

because the Gathering Agreements do not touch and concern the Debtors' real property.   *Id*. at 8-

11.   The Court also concluded that if, under Texas law, horizontal privity of estate must exist for

covenants to run with the land, the lack of that privity between Sabine and Nordheim provided

additional support for its decision.   *Id*. at 11-15.   Finally, the Court held that "the covenants at

issue do not limit the use of or burden Sabine's mineral estate such that they could run with that

real property as equitable servitudes."   *Id*. at 16.

After finding that the Gathering Agreements' covenants did not run with the land, the

Court entered the Rejection Order granting the Debtors' rejection motion on May 11, 2016.   ECF

No. 1082.[4]   On May 13, 2016, Nordheim filed a notice of appeal from the Rejection Order, ECF

No. 1098, and a motion to stay the Rejection Order pending that appeal.  ECF No. 1099.[5]   On

May 20, 2016, Nordheim filed a motion to stay the Summary Judgment Order pending appeal

"for the reasons stated in its motion for stay of the Rejection Order."  Case No. 16-1043, ECF

No. 29.

## ARGUMENT

## NORDHEIM DOES NOT MEET THE STANDARD FOR A STAY PENDING APPEAL.

Nordheim cannot satisfy any of the requirements of Bankruptcy Rule 8007 and is

therefore not entitled to the "extraordinary relief of a stay pending appeal."  *In re DJK*

*Residential, LLC*, No. 08-10375, 2008 WL 650389, at *5 (S.D.N.Y. Mar. 7, 2008); Fed. R.

Bankr. P. 8007.  "A party seeking a stay pending appeal carries a heavy burden."  *In re Adelphia*

*Commc'ns. Corp.*, 333 B.R. 649, 659 (S.D.N.Y. 2005).   It is Nordheim's burden to "show

satisfactory evidence" that (i) it will suffer irreparable injury if the stay is not granted; (ii) the

stay will not substantially harm other parties in these proceedings; (iii) "there is a substantial

possibility of success on the merits" of its appeal; and (iv) the public interest favors a stay.  *DJK*

*Residential,* 2008 WL 650389, at *2 (citing *Hirschfeld v. Bd. of Elections*, 984 F.2d 35, 39 (2d

Cir. 1992)).[6]   "Failure to satisfy one prong of this standard for granting a stay will doom the

motion."  *In re Turner*, 207 B.R. 373, 375 (B.A.P. 2d Cir. 1997), *as amended* (Mar. 4, 1997).

---

[4]    The Rejection Order also authorizes the rejection of agreements between the Debtors and HPIP Gonzales Holdings, LLC ("HPIP") that are substantively similar to the Gathering Agreements.  ECF. No. 1082.  Tellingly, though HPIP objected to the Debtors' rejection motion and joined Nordheim's request for certification of the Rejection Order for direct appeal, ECF No. 1143, HPIP did not move for a stay or join Nordheim's Motions.

[5]    Nordheim also filed a petition seeking direct appeal to the Second Circuit.  ECF No. 1100.

[6]    Indeed, "[a] stay of a judgment pending an appeal is an exercise of judicial discretion and is not a matter of right, even if irreparable injury might otherwise result."  *In re: Republic Airways Holdings Inc.*, No. 16-CV-3315

### A.      Nordheim Will Not Suffer Irreparable Harm from the Denial of a Stay.

Nordheim's motion fails at the threshold, because it cannot "'demonstrate that irreparable injury is *likely* in the absence of [a stay].'" *Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199, 212 (2d Cir. 2014) (quoting *Winter v. NRDC*, 555 U.S. 7, 20 (2008)).   Nordheim's inability to show irreparable harm is a critical failure because "[a] showing of irreparable harm is the 'principal prerequisite for the issuance' of a stay." *In re Calpine Corp.*, No. 05-60200, 2008 WL 207841, at *4 (Bankr. S.D.N.Y. Jan. 24, 2008) (quoting *In re Adelphia Commc'ns. Corp.*, 361 B.R. 337, 347 (S.D.N.Y. 2007)).   Indeed, "the moving party must demonstrate that such injury is likely before the other requirements will be considered." *In re Perry H. Koplik & Sons, Inc.*, No. 02-B-40648, 2007 WL 781905, at *1 (Bankr. S.D.N.Y. Mar. 13, 2007); *see also Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66-67 (2d Cir. 2007) (*per curiam*) ("[T]he moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered.") (internal quotation marks omitted).

To show irreparable harm, Nordheim is required to identify an injury "requiring a remedy of more than mere money damages." *Ford v. Reynolds*, 316 F.3d 351, 355 (2d Cir. 2003) (internal quotation marks omitted); *see also In re Liggett*, 118 B.R. 219, 222 (Bankr. S.D.N.Y. 1990) (finding no irreparable injury where any harm suffered by movant "could be compensated by money damages"); *In re Vytautas Vebeliunas*, No. 01 Civ. 1108, 2002 WL 535503, at *3 (S.D.N.Y. Apr. 10, 2002) (same).

Nordheim argues it will be irreparably injured absent a stay because (1) the Orders "will jeopardize what Nordheim maintains—and what the appellate court could conclude—are real

---

(KBF), 2016 WL 2621990, at *7 (S.D.N.Y. May 6, 2016) (quoting *In re New York Skyline, Inc.*, 520 B.R. 1, 5 (S.D.N.Y. 2014)) (internal quotation marks omitted).

property interests," Stay Mot. ¶ 44, and (2) "the availability of monetary recovery is uncertain due to the insolvency of the party obligated to pay damages," *id.* ¶ 47. Neither argument is persuasive.

*First*, it is simply not true that any decision that affects an alleged interest in real property invariably gives rise to irreparable injury as a matter of law. Nordheim bases that sweeping proposition on a pair of franchise cases in which the franchisee refused to vacate the franchisor's real property. *See* Stay Mot. ¶ 45 (citing *7-Eleven, Inc. v. Khan*, 977 F. Supp. 2d 214, 234 (E.D.N.Y. 2013), and *Scarsdale Cent. Serv. Inc. v. Cumberland Farms, Inc*., No. 13-Civ.-8730-NSR, 2014 WL 930092, at *7 (S.D.N.Y. Mar. 7, 2014), *reconsideration granted in part and denied in part*, 2014 WL 2870283 (S.D.N.Y. June 24, 2014)). Those cases applied the general rule that "unauthorized interference with a real property interest constitutes irreparable harm as a matter of law, given that a piece of property is considered to be a unique commodity for which a monetary remedy for injury is an inherently inadequate substitute." *7-Eleven*, 977 F. Supp. 2d at 234; *see also Scarsdale*, 2014 WL 930092, at *7-8. Even assuming *arguendo* that the alleged "real property" interests here implicate that general rule in the first place, it does not apply where, as here, the parties' agreement contains a liquidated damages provision. "[W]hether real property loss creates irreparable injury is a fact-sensitive inquiry, and ... such loss cannot be said to constitute irreparable harm as a matter of law." *Medgar Evers Houses Assocs., L.P. v. Carro*, No. 01-CV-6107, 2001 WL 1456190, at *4 (E.D.N.Y. Nov. 6, 2001); *American Halal Live Poultry, LLC v. City of Perth Amboy*, Civ. No. 2:16-0326-WJM, 2016 WL 2625027, at *3 (D.N.J. May 9, 2016); *In re American Land Acquisition Corp.*, No. 12-76440-AST, 2013 WL 2481534, at *7 (Bankr. E.D.N.Y. June 10, 2013). Because the deficiency payment provision in the parties' agreements provides a basis to calculate money damages here, such damages provide

9

an adequate remedy for Nordheim regardless of whether its rights under those Agreements are characterized as real property rights.

*Second*, Nordheim has put forward no evidence that Sabine will be less able to satisfy all or part of the damages claim at the end of an appellate process than it could when the Court granted the Debtors' rejection motion.  Indeed, it is generally the case that parties rejecting contracts in bankruptcy are of questionable solvency; that does not permit their counterparties to demonstrate irreparable injury sufficient for a stay or injunction.  Neither of the cases Nordheim cites concern bankruptcy proceedings, nor do they stand for the proposition that the insolvency of a party to bankruptcy proceedings gives rise to irreparable injury.  *See* Stay Mot. ¶ 47 (citing *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245 (2d Cir. 1999), and *CRP/Extell Parcel I, L.P. v. Cuomo*, 394 F. App'x 779 (2d Cir. 2010)).  To the contrary, courts regularly find that no irreparable injury sufficient to support a stay exists even when the non-movant is in bankruptcy proceedings.  *See, e.g.*, *In re BGI, Inc.*, 504 B.R. 754, 762-64 (S.D.N.Y. 2014); *In re Calpine Corp.*, 2008 WL 207841, at *4-5.  If it were otherwise, irreparable injury would lurk in every bankruptcy, threatening to stall or derail the proceeding by stay or injunction whenever a creditor was at risk of recovering less than 100 cents on the dollar.

### B.    The Debtors Will Suffer Significant Injury If the Court's Orders Are Stayed Pending Appeal.

Nordheim dismisses the impact of a stay on the Debtors as "minimal" and as putting them "in no worse position than [they] occupied prior to the Court's Rejection Order."  Stay Mot. ¶ 48.  Nordheim argues that Sabine bargained for the Gathering Agreements, under which Nordheim would continue to provide services to Sabine while Nordheim's appeal is pending.  *Id.* ¶ 49.  This argument understates the harm to the Debtors if the Orders are stayed pending appeal and ignores the reality that the Debtors are under Chapter 11 bankruptcy protection.

*First*, in the event of a stay, the Debtors would presumably continue to accrue liability for deficiency payments under the Gathering Agreements, thwarting their path to financial recovery. This Court has already acknowledged the Debtors' determination that the Gathering Agreements are no longer financially viable and found rejection to be a reasonable exercise of the Debtors' business judgment.  Rejection Decision at 5, 8.  At the time the Debtors moved to reject the Gathering Agreements, they estimated that "rejection of the Nordheim Agreements will save the Debtors approximately $35 million in deficiency payments over the life of Nordheim Agreements."  *Debtors' Omnibus Motion for Entry of an Order Authorizing Rejection of Certain Executory Contracts*, ECF No. 371, ¶ 9.

*Second*, on May 19, 2016, the Court authorized the Debtors to enter into an agreement ("DCP Agreement") with DCP South Central Texas LLC ("DCP"), whereby the Debtors contracted directly with DCP, instead of using Nordheim as an intermediary to route the Debtors' gas products.  *Order Authorizing Sabine Oil & Gas Corporation to Enter Into Facilities Agreement with DCP South Central Texas LLC*, ECF No. 1114.  As the Debtors explained, it is essential for them to provide for an alternative means of routing their gas products, which are currently routed through Nordheim's facilities, to DCP's pipeline upon rejection of the Gathering Agreements.  *Debtors' Motion for Entry of an Order Authorizing the Debtors to Enter Into Facilities Agreement with DCP South Central Texas LLC*, ECF No. 1073 ("Authorization Motion") ¶ 14.  Accordingly, and as a result of the DCP Agreement and the Debtors' recent infrastructure improvements, there will no longer be a need for Nordheim to serve as an intermediary between the Debtors and DCP; and "[t]here are thus no services that Nordheim can provide the Debtors, and no reason to waste estate resources paying Nordheim approximately $200,000 a month, as Nordheim suggests."  *Debtors' Reply to Nordheim's Objection to Debtors'*

*Motion for an Order Authorizing the Debtors to Enter into Facilities Agreement with DCP South Central Texas LLC*, ECF No. 1103 ¶ 5; *Declaration of Michael Magilton In Support of Debtors' Reply to Nordheim's Objection to Debtors' Motion for an Order Authorizing the Debtors to Enter into Facilities Agreement with DCP South Central Texas LLC*, ECF No. 1104 ¶¶ 3-4.[7]  In authorizing the DCP Agreement and overruling Nordheim's objection thereto, the Court found that a sound business purpose exists for entering into that new contract.  *See Order Authorizing Sabine Oil & Gas Corporation to Enter into Facilities Agreement with DCP South Central Texas LLC*, ECF No. 1114; Authorization Mot. ¶ 11; 5/17/16 Hr'g Tr. at 58:15-25.   A stay of the Orders would interfere with the Debtors' ability to pursue this important business opportunity and potentially expose the Debtors to damages and additional expenses under the DCP Agreement.

**Third**, Nordheim's arguments that a stay will merely preserve the "bargained-for status quo" existing under the Gathering Agreements ignore that the Bankruptcy Code provides for rejection of contracts to protect debtors and to allow them to maximize their estates.  *See* 11 U.S.C. § 365.  This is precisely what the Court approved in this case—rejection of the Gathering Agreements and entry into the DCP Agreement is the best course for the Debtors.

Nordheim has provided no compelling reason for disturbing the Debtors' efforts to avoid burdensome penalties under the Gathering Agreements and to proceed instead under the DCP Agreement.[8]  By contrast, a stay pending appeal of this Court's orders would significantly injure

---

[7]    The Magilton Declaration has previously been provided to the Court and the parties and is incorporated herein as part of the record for decision of this motion.

[8]    Nor has Nordheim posted a bond for its appeals or demonstrated why a bond should not be required. *See In re Sabine Oil & Gas Corp.*, 548 B.R. 674, 681 (Bankr. S.D.N.Y. 2016) ("[W]here the movant seeks imposition of a stay without a bond, 'the applicant has the burden of demonstrating why the court should deviate from the ordinary full security requirement.'") (citation omitted).  Rather, it seeks to shift the risk of its appeals onto the Debtors.

the Debtors and would create unwarranted obstacles for them at a time when their efforts are more productively focused on confirming their plan of reorganization and emerging from Chapter 11 proceedings.

### C. Nordheim Has Not Demonstrated a Likelihood of Success on the Merits.

"The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury that the plaintiff will suffer absent the stay; in other words, 'more of one excuses less of the other.'"  *In re Sabine*, 548 B.R. at 684 (quoting *In re 473 W. End Realty Corp.*, 507 B.R. 496, 502 (Bankr. S.D.N.Y. 2014)) (denying stay pending appeal where movant failed to demonstrate "substantial possibility" of success on appeal by merely presenting a "pared-down reargument" of certain of claims and arguing that other claims were "colorable"). In light of its failure to demonstrate irreparable harm, Nordheim must "clearly establish a substantial possibility of success on appeal."  *29 Brooklyn, LLC v. Chesley*, No. 15 CV 5180, 2015 WL 9255549, at *3 (Bankr. E.D.N.Y. Dec. 16, 2015) ("'showing of substantial possibility of success is inversely proportional to the amount of irreparable injury,'") (citations omitted).

> ### 1. Nordheim does not challenge the Court's application of the "business judgment" test for rejecting a contract or its conclusion that the Debtors' rejection of the Gathering Agreements satisfies the test.

Nordheim does not challenge the Court's application of the "business judgment" test, which requires a bankruptcy court deciding a motion to assume or reject to "'plac[e] itself in the position of ... the debtor in possession and determin[e] whether assuming [or rejecting] the contract would be a good decision[.]"  Rejection Decision at 4-5 (alterations in original) (quoting *In re Orion Pictures Corp.*, 4 F. 3d 1095, 1099 (2d Cir. 1993)).

Even if Nordheim were correct that the covenants at issue[9] created a real property right not subject to rejection, Nordheim offers no reason why the Court should not have rejected the "terms [of the Gathering Agreements] that *are* subject to rejection."    Rejection Decision at 9 (emphasis added).    Accordingly, Nordheim fails to address the Court's reasoning in its Rejection Decision that even if "the covenants are ultimately determined to run with the land, the Debtors will likely need to pursue alternative arrangements with Nordheim ... consistent with the covenants by which the Debtors remain bound.  In either scenario, the Debtors' conclusion that they are better off rejecting the [Gathering Agreements] ... is a reasonable exercise of their business judgment."  Rejection Decision at 8.  In short, Nordheim has not shown a "substantial possibility of success on appeal" from the Rejection Order, which rejects the Gathering Agreements and not the property rights Nordheim argues they created.

### 2.    "Uncertainty" is not a sufficient basis for a stay pending appeal.

Nordheim acknowledges its burden to show a "substantial possibility" that it will succeed on appeal, Stay Mot. ¶ 16, but it does not attempt to meet that standard.  Instead, Nordheim argues only that success is *conceivable*:

- "a reviewing court *could* also disagree with the Court's conclusion that privity exists only in what the Court called the 'traditional model,'" Stay Mot. ¶ 23,

- "even if horizontal privity is required, the reviewing court *could* conclude that this requirement was met," Stay Mot. ¶ 26,

- "[a]n appellate court *could* also disagree with this Court's holding that the Gathering Agreements do not touch and concern the land," Stay Mot. ¶ 27, and

---

[9]    "[T]the covenants at issue are ... (ii) Debtors' dedication to Nordheim of certain gas and condensate products to the performance of the Nordheim Agreements; and (iii) the Debtors' covenant to pay Nordheim a gathering fee."  Summary Judgment Decision at 7 n. 29.

- "[a] reviewing court *could* therefore reasonably differ in its conclusion as to whether the Gathering Agreement covenants" satisfy one of the tests for whether covenants "touch and concern the land," Stay Mot. ¶ 28.[10]

A reviewing court *could* of course decide to do any number of things, but, besides rehashing its arguments opposing rejection, Nordheim offers no rationale for *why* a reviewing court *would* agree with Nordheim. A theoretical possibility of reversal exists in every case; highlighting this possibility is wholly inadequate to meet Nordheim's "heavy burden" to show a substantial possibility that it "*will* succeed" on appeal. *See Adelphia*, 333 B.R. at 659 (emphasis added); *In re New York Skyline, Inc.*, 520 B.R. 1, 4 (S.D.N.Y. 2014) ("It is not enough that the chance of success on the merits be better than negligible.") (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)) (internal quotation marks omitted); *In re General Motors Corp.*, 409 B.R. 24, 30-32 (Bankr. S.D.N.Y. 2009).

At most, Nordheim's response to this Court's Orders and related decisions is that the Court made its findings under an "uncertain" legal framework regarding covenants that run with the land. Stay Mot. ¶¶ 2, 16, 20, 22, 27. Uncertainty is not a sufficient basis for staying an order pending appeal. *In re: Republic Airways Holdings Inc.*, 16-CV-3315 (KBF), 2016 WL 2621990, at *8 (denying request for stay where movant argued there was a "lack of legal authority" for the bankruptcy court's ruling: "[t]his position misunderstands the [movant's] obligation in relation to this motion. To the extent that the [movant's] view is that the Bankruptcy Court acted beyond any statutory or legal authority, it needed to lay out existing authority and clearly argue why these particular actions are contrary to or exceed it."). In any case, the purported "uncertainty" here cuts against Nordheim. In rendering the Rejection Order and Summary Judgment Order,

---

[10]    All emphases added.

15

the Court did not ignore binding precedent or a divergence of opinion in the case law.  Rather,

the Court carefully considered existing Texas precedent and rejected Nordheim's arguments on

the merits.  *See* Summary Judgment Decision at 9-10, 13.  Nothing in Nordheim's motion, which

merely reiterates the underlying arguments this Court has already rejected, compels a stay

pending appeal, particularly when Nordheim's arguments are largely based on distortions of the

Court's decisions.

The Court based its ultimate decision—that the covenants at issue did not create real

property interests exempt from rejection—on two distinct conclusions discussed in the Rejection

Decision and Summary Judgment Decision.  ***First***, the covenants do not "touch and concern"

real property.  Summary Judgment Decision at 8-11; Rejection Decision at 14-17.  ***Second***, if

horizontal privity of estate is required under Texas law, Nordheim failed to show it here.

Summary Judgment Decision at 11-15, Rejection Decision at 12-14.

> **a.     Nordheim fails to show a substantial possibility that a
> reviewing court will find the covenants at issue satisfied the
> "touch and concern" requirement.**

The "touch and concern" requirement alone is fatal to Nordheim's motion.   In the

Rejection Decision, the Court concluded that the covenants at issue do not satisfy either of the

two tests generally used by Texas courts for determining whether the requirement that the

covenants at issue "touch and concern" the land has been met:

- whether the covenant "affected the nature, quality or value of the thing demised, independently of collateral circumstances, or if it affected the mode of enjoying it," Rejection Decision at 14 (quoting *El Paso Refinery, LP v. TRMI Holdings, Inc.*, 302 F.3d 343, 356 (5th Cir. 2002)); and

- whether "the promisor's legal relations in respect of the land in question are lessened—his legal interest as owner rendered less valuable by the promise . . . [and] if the promisee's legal relations in respect to the land are increased—his legal interest as owner rendered more valuable by the promise," Rejection Decision at 14 (quoting *Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 911 (Tex. 1982)) (alterations in original).

Nordheim argues that, because the covenants at issue impact the value of both Sabine's and Nordheim's land, a reviewing court's conclusion regarding the first test could "reasonably differ." Stay Mot. ¶ 28. But, the Court, citing Fifth Circuit precedent, noted that "it is not enough that a covenant affect the value of the land; 'it must still affect the owner's interest in the property or its use in order to be a real covenant.'" Rejection Decision at 14 (quoting *El Paso Refinery*, 302 F.3d at 357). Nordheim dismisses this citation to *El Paso Refinery* as "the Fifth Circuit's (non-binding) *Erie*-guess," but suggests no precedent more persuasive or on-point that would demonstrate a substantial possibility that this Court will be reversed on appeal. Stay Mot. ¶ 28.

Nordheim also challenges this Court's conclusion that the covenants in the Gathering Agreements did not burden an interest in real property, but rather concerned personal property—*i.e.*, the minerals extracted and delivered by Sabine. Summary Judgment Decision at 9-10. But Nordheim ignores or misconstrues the Court's application of the second "touch and concern" test, where the Court distinguished cases that concerned the burdening of minerals in the ground from the case at hand, in which the covenants at issue relate only to already extracted products. Stay Mot. ¶¶ 31-34. Again, Nordheim repeats its citations to cases the Court distinguished as addressing covenants with respect to real property (minerals in the ground), but does not explain why a reviewing Court should find (i) that the covenants in the Gathering Agreements, which relate to personal property (extracted minerals), are covenants that "touch and concern" real property or (ii) that the extracted minerals addressed in the Gathering Agreements should be treated as real and not personal property. At best, Nordheim asserts that the Gathering Agreements conveyed a real property interest to Nordheim because the conveyance of a real property interest in a mineral estate is ***possible*** under Texas law. *See* Stay Mot. ¶¶ 31-32. That

such a conveyance is possible does not suggest a substantial possibility that the Court erred in concluding that no such conveyance occurred under these Gathering Agreements.[11]

> **b.**     **The Court's conclusion that Nordheim failed to show horizontal privity was not essential to the Court's Rejection Order and Summary Judgment Order.**

Nordheim also takes issue with the Court's conclusions regarding horizontal privity of estate, arguing that, because "the Rejection Order ***rests in part*** on this open legal issue" regarding whether horizontal privity is a required element for establishing that a covenant runs with the land, Nordheim has a substantial possibility of success on appeal. Stay Mot. ¶ 22 (emphasis added). An appellate court, however, can affirm the Court's orders and related decisions based solely on the Court's finding that the covenants at issue do not touch and concern the land. The Court acknowledged the "ambiguity under Texas law as to whether horizontal privity of estate" is required for a covenant to run with the land, but also recognized the numerous Texas cases cited by the Debtors, which expressly included a discussion of horizontal privity in their analyses. Summary Judgment Decision at 12. "Therefore, absent any actual authority to the contrary," the Court proceeded with a horizontal privity analysis under Texas law, finding Nordheim had not shown that horizontal privity exists between the original covenanting parties with respect to the covenants at issue. *Id.*

Despite multiple rounds of briefing in two separate proceedings, Nordheim has not identified any applicable precedent that creates a substantial possibility that a reviewing court will reverse this Court's decisions that the covenants at issue here did not create real property

---

[11]     Nordheim also contends that Texas law recognizes that the right to develop minerals includes the right to transport minerals, but even if the right to transport minerals is included in the right to develop them, it does not follow that the right to transport minerals is ***sufficient*** on its own to constitute a right to develop minerals constituting a property right. Stay Mot. ¶ 25.

interests.  As the Court explained already, Nordheim relied on "either distinguishable or largely inapposite" cases in arguing that that the Debtors' covenant to pay Nordheim a fee for gathering gas and condensate products under the Gathering Agreements created a real property interest.  *Id.* at 8-9; *see also In re Ames Dep't Stores, Inc.*, No. M47(DAB), 2003 WL 749172, at *3 (S.D.N.Y. Mar. 5, 2003) ("In the absence of case law to support the Landlord's legal position, this Court cannot find any likelihood that the Landlord's argument would succeed on an appeal to a District Court, even given the de novo review that would be exercised by the District Court.").  Similarly, the Court noted that Nordheim had not "identified any authority for the proposition that the horizontal privity of estate prong is satisfied if the covenanting parties have horizontal privity of estate only with respect to property separate from the property burdened by the covenant at issue."  Summary Judgment Decision at 13.  Nordheim merely argued, "without support," that horizontal privity exists through conveyance of any land "involved" in the covenants at issue.  *Id.*

In its Motions, Nordheim simply repeats its unsupported arguments and inapposite citations, Stay Mot. ¶¶ 9-15, and offers various hypothetical outcomes on appeal, *see supra* at 13-14.  For example, Nordheim posits that "[a] reviewing court could [] reasonably differ in its conclusion as to whether" the covenants at issue satisfy one of the tests for the "touch and concern" requirement.  Stay Mot. ¶ 28.  That reasonable minds *can* differ with respect to an issue does not demonstrate a "substantial possibility" that they *will* differ.  Nordheim has not carried its burden with respect to the likelihood of success prong in this Rule 8007 inquiry.

### D.    The Public Interest Favors Denying the Motion

The Court has already held that "the goals of promoting the restructuring of the Debtors' obligations, the preservation of the Debtors' business, and the Debtors' emergence from chapter 11 are issues of significant public interest" militating against stays in this case.  *In re Sabine*, 548

B.R. at 685.    That holding is consistent with case law in this district, which emphasizes the

importance of expedition and finality in bankruptcy proceedings.  *See, e.g.*, *In re BGI, Inc.*, 504

B.R. at 764 ("The public interest favors the expedient administration of the bankruptcy

proceedings."); *In re Calpine Corp.*, 2008 WL 207841, at *7 ("there is a strong public need for

finality of decisions, especially in a bankruptcy proceeding"); *In re Adelphia Commc'ns. Corp.,*

368 B.R. 140, 284 (Bankr. S.D.N.Y. 2007) ("the public interest cannot tolerate any scenario

under which private agendas can thwart the maximization of value"); *In re Metiom, Inc.*, 318

B.R. 263, 272 (S.D.N.Y. 2004) ("This Court finds that the public interest in the expeditious

administration of bankruptcy cases as well as in the preservation of the bankrupt's assets for

purposes of paying creditors rather than litigation of claims lacking a substantial possibility of

success, outweighs the public interest in resolving the issues presented here on appeal.").  This is

particularly true where, as here, "there is no substantial possibility of success on the merits of the

appeal."  *Id.*; *see also supra* at 12-18.

Nordheim contends that the Court should disregard the weight of this authority because

of the "disruptive effect" of the Court's Order, which "threatens the viability of thousands of

agreements in the nation's midstream oil and gas industry."  Stay Mot. ¶¶ 2, 38.  Nordheim's

argument ignores that the Court did not rule on "thousands of agreements in the oil and gas

industry."  Rather, the Court held that Sabine may reject ***these*** Gathering Agreements because

they do not run with the land, after carefully analyzing the specific terms of the Gathering

Agreements, including the primary covenants at issue and other terms that differentiate the

Gathering Agreements from agreements in other cases.  For example, the Court rejected

Nordheim's argument that an interest in a produced mineral constitutes a real property interest

because Nordheim's cited precedent did not concern an agreement in which the land owner

preserved the right "to operate its Interests free from any control . . . and in a manner as [it], in its sole discretion, may deem advisable," Gas Gathering Agreement § 1.4(i).  Summary Judgment Decision at 9-10.  Similarly, the Court held that Nordheim does not have a real property interest in the right to take minerals out of the Debtors' mineral estate because, under the Gathering Agreements, Sabine, not Nordheim, is responsible for connecting the wells to receipt points. Summary Judgment Decision at 14; Gas Gathering Agreement § 2.1 (Sabine agrees "to construct, at its sole cost and expense, the Gathering System, commencing at the current Receipt Points").

The Court interpreted the Gathering Agreements in accordance with their terms.  Nothing in the record supports speculation by Nordheim or by journalists that the Order will trigger a cascade of similar orders that will in turn undermine the midstream gas gathering and delivery industry.  *In re 473 W. End Realty Corp.*, 507 B.R. at 508 (movant's "blanket assertions that the residents will be harmed does not amount to evidence" of public interest, "as is [movant's burden]").  And there is certainly no evidence to suggest that the midstream gas gathering and delivery industry will not survive the time it takes Nordheim to appeal the Court's Order in the ordinary course of litigation.  *In re Sabine*, 548 B.R. at 682 (party seeking stay "will have a full and fair opportunity to litigate its objections" before a reviewing court at the appropriate time). Staying the Order would not serve the public interest.

## CONCLUSION

For the foregoing reasons, the Court should deny Nordheim's request for a stay pending appeal.

Dated:  May 25, 2016          */s/ Ryan Blaine Bennett*
       New York, New York      Paul M. Basta, P.C.
                                     Jonathan S. Henes, P.C.
                                     Christopher Marcus, P.C.
KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

- and -

James H.M. Sprayregen, P.C.
Ryan Blaine Bennett (admitted *pro hac vice*)
Brad Weiland (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

- and -

Mark McKane, P.C. (*pro hac vice admission pending*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
555 California Street
San Francisco, California 94104
Telephone:    (415) 439-1400
Facsimile:    (415) 439-1500

- and -

Anna Rotman (*pro hac vice admission pending*)
Nicolas Thompson (*pro hac vice admission pending*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
600 Travis Street
Houston, Texas 77002
Telephone:    (713) 835-3600
Facsimile:    (713) 835-3601

*Counsel to the Debtors and Debtors in Possession*