| | |
|---|---|
| Paul M. Basta, P.C. | James H.M. Sprayregen, P.C. |
| Jonathan S. Henes, P.C. | Ryan Blaine Bennett (admitted *pro hac vice*) |
| Christopher Marcus, P.C. | Brad Weiland (admitted *pro hac vice*) |
| **KIRKLAND & ELLIS LLP** | **KIRKLAND & ELLIS LLP** |
| **KIRKLAND & ELLIS INTERNATIONAL LLP** | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| 601 Lexington Avenue | 300 North LaSalle Street |
| New York, New York 10022 | Chicago, Illinois 60654 |
| Telephone:   (212) 446-4800 | Telephone:   (312) 862-2000 |
| Facsimile:   (212) 446-4900 | Facsimile:   (312) 862-2200 |
| | |
| | Anna Rotman, P.C. (*pro hac vice admission pending*) |
| Mark McKane, P.C. (*pro hac vice admission pending*) | Nicolas Thompson (*pro hac vice admission pending*) |
| **KIRKLAND & ELLIS LLP** | **KIRKLAND & ELLIS LLP** |
| **KIRKLAND & ELLIS INTERNATIONAL LLP** | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| 555 California Street | 600 Travis Street |
| San Francisco, California 94104 | Houston, Texas 77002 |
| Telephone:   (415) 439-1400 | Telephone:   (713) 835-3600 |
| Facsimile:   (415) 439-1500 | Facsimile:   (713) 835-3601 |

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| | ) | Case No. 15-11835 (SCC) |
| SABINE OIL & GAS CORPORATION, *et al.*,[1] | ) | |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

---

[1] The debtors in these chapter 11 cases (the "Debtors"), along with the last four digits of each Debtor's federal tax identification number, include: Sabine Oil & Gas Corporation (4900); Giant Gas Gathering LLC (3438); Sabine Bear Paw Basin LLC (2656); Sabine East Texas Basin LLC (8931); Sabine Mid-Continent Gathering LLC (6085); Sabine Mid-Continent LLC (6939); Sabine Oil & Gas Finance Corporation (2567); Sabine South Texas Gathering LLC (1749); Sabine South Texas LLC (5616); and Sabine Williston Basin LLC (4440). The location of Debtor Sabine Oil & Gas Corporation's corporate headquarters and the Debtors' service address is: 1415 Louisiana, Suite 1600, Houston, Texas 77002.

| | |
|---|---|
| SABINE OIL & GAS CORPORATION, *et al.*,  )<br>                                    )<br>                    Plaintiffs,  )<br>         v.                        )<br>                                    )<br>HPIP GONZALES HOLDINGS, LLC  )<br>                                    )<br>                    Defendant.   )<br>                                    )<br>_____  )<br>                                    )<br>SABINE OIL & GAS CORPORATION, *et al.*,  )<br>                                    )<br>                    Plaintiffs,  )<br>         v.                        )<br>                                    )<br>NORDHEIM EAGLE FORD GATHERING, LLC  )<br>                                    )<br>                    Defendant.   )<br>                                    )<br>_____  )  | Adversary Proceeding<br>Case No. 16-01042<br><br><br><br><br><br><br><br><br><br>Adversary Proceeding<br>Case No. 16-01043 |

**DEBTORS' OBJECTION TO NORDHEIM'S EXPEDITED REQUEST FOR CERTIFICATION OF REJECTION ORDER FOR DIRECT APPEAL PURSUANT TO 28 U.S.C. § 158(D)(2) AND FED. BANKR. R. 8006(F)**

The above-captioned debtors and debtors in possession (collectively, the "Debtors" or "Sabine") file this objection (the "Objection") to *Nordheim's Expedited Request for Certification of Rejection Order for Direct Appeal Pursuant to 28 U.S.C. § 158(d)(2) and Fed. Bankr. R. 8006(f)* [Docket No. 1100] (the "Petition"). In support of this Objection, the Debtors respectfully state as follows:

**Preliminary Statement**

1. Nordheim's Petition seeks certification of a direct appeal to the United States Court of Appeals for the Second Circuit of the Court's May 11, 2016 Order Authorizing Rejection of Certain Executory Contracts [Dkt. No. 1082] (the "Rejection Order").[2] HPIP joined

---

[2] Due to the voluminous size of the cited materials, they are not attached to this filing, but Debtors will promptly provide them to the Court if requested and if not filed under seal.

2

Nordheim's Petition on May 24, 2016 [Dkt. No. 1143]. The Petition should be denied because Nordheim has failed to demonstrate that the Court's Rejection Order presents the "exceptional circumstances" appropriate for a direct appeal pursuant to 28 U.S.C. § 158(d)(2). *See, e.g.*, *Zewdie v. PNC Bank, N.A.*, No. 15-2167, 2015 WL 6007410, at *1 (D. Md. Oct. 9, 2015).

2. Nordheim contends that this Court should certify the Rejection Order for direct appeal because the Order involves (1) "a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States," or (2) "a matter of public importance." (Pet. ¶ 1.) This is incorrect.

3. Nordheim's Petition is based on a fundamental mischaracterization of this Court's Rejection Order. Nordheim disagrees with this Court's decision permitting Sabine to reject its contracts with Nordheim and HPIP and seeks to reverse that decision on appeal. Yet, in its Petition, Nordheim minimizes the actual basis of the Court's Rejection Order and instead attempts to focus on what it characterizes as the Court's resolution of novel issues of Texas law. Nordheim's ultimate goal is to redirect this appeal to the Texas Supreme Court, which Nordheim seems to believe will prove a more favorable forum.

4. Specifically, Nordheim erroneously contends in its Petition that "[t]his Court's decision allowing Sabine to reject its contracts with Nordheim *turns on* questions of first impression under Texas law[.]" (Pet. ¶ 1 (emphasis added).) In reality, the Court explicitly stated that it was "rul[ing] on the Motion without deciding in a binding way the underlying legal dispute[.]" (Rejection Decision [Dkt. No. 872] at 7-8.) The Court granted the Motion based solely on its finding that the Debtor properly exercised its business judgment. (*Id.* at 5, 18.) The business judgment rule is a legal concept that the Second Circuit has thoroughly addressed. A direct appeal is thus not warranted for the actual basis of the Court's Rejection Order.

3

5.      Despite the fact that the core issue in the Rejection Order creates no grounds for direct appeal, Nordheim contends that direct appeal is appropriate because "the Court also found preliminarily that the covenants" created by the parties' agreements "did not 'concern the land or its use or enjoyment'" and then "adhered to these holdings in its subsequent Adversary Decision." (Pet. ¶ 18.) To bolster its case for direct appeal and, ultimately, certification to the Texas Supreme Court, Nordheim suggests that the Court decided pure issues of Texas law in its Adversary Decision. That too is incorrect.

6.      The Court's preliminary findings in the Rejection Order and Adversary Decision [Adversary Proceeding Dkt. No. 20] do not involve the pure legal issues that courts have deemed appropriate for direct appeal; rather, the Court's holding that the parties' covenants do not run with the land depends on a case-specific analysis of the language of the parties' agreements and relevant facts. A direct appeal is not appropriate where, as here, the legal questions at issue are "heavily dependent on the particular facts of a case[,]" and resolution of the appeal will not further Congress's goal of addressing "the paucity of settled bankruptcy-law precedent." *Weber v. United States*, 484 F.3d 154, 158 (2d Cir. 2007). The Court's holdings do not require the resolution of unsettled questions of Texas law because the Court did not purport to determine the proper construction of Texas law; instead, the Court held that whatever the applicable standard for establishing that a covenant runs with the land, it was not met in this case, based on the facts and contractual language at issue.

7.      Direct appeal is also unwarranted here because this case does not present an issue of "public importance." *See* 28 U.S.C. § 158(d)(2). A contract dispute between private parties—as opposed to a constitutional issue, for example—is not a matter of public importance. Here, Nordheim hopes to overturn this Court's Rejection Order in order to continue to exact, under its

4

contracts, hundreds of thousands of dollars each month from Sabine for services that provide no benefit to Sabine. Furthermore, despite Nordheim's selective citation to news articles and an amicus brief that speculate about what might happen, there is no evidence that the Court's case-specific decisions have actually had a broad public impact, let alone an impact that would be meaningfully different if the standard appellate process is followed instead of a direct appeal.

8. For the above reasons, and as more fully set forth below, this Court should deny the Petition because the Rejection Order – including any attendant issues – do not warrant direct appeal under the narrow circumstances set forth in 28 U.S.C. § 158(d)(2).

**Background**

9. On March 8, 2016, this Court issued the Rejection Decision [Dkt. No. 872]. The Court addressed the following case-specific question: "whether a reasonable business person would make a similar [rejection] decision *under similar circumstances*." (Rejection Decision at 5 (emphasis added).) To make that determination, the Court examined the circumstances specific to Nordheim and HPIP's arrangements with Sabine, noting, for example, that there was no evidence that Sabine's decision to reject the contracts was "the product of bad faith, whim, or caprice." (*Id.* at 8.) Ultimately the Court held that Sabine's decision constituted a "reasonable exercise" of its "business judgment" because Sabine could not deliver what the agreements required and thus needed to negotiate new agreements. (*Id.*)

10. The Court specifically refused to decide any issues of Texas law because, as Nordheim itself urged, the Second Circuit's decision in *Orion Pictures Corp. v. Showtime Networks* (*In re Orion Pictures Corp.*), 4 F.3d 1095 (2d Cir. 1993), prohibited it from doing so. (Rejection Decision at 6-8, 18-19.) The Court explicitly stated:

> In the instant case, because there is not procedural clarity or consensus as to whether issue was properly joined on the substantive legal issues presented by the Motion – *i.e.*, whether certain of the contractual terms are covenants that 'run with

5

the land' under Texas law – the Court must proceed in accordance with *Orion* and rule on the Motion without deciding in a binding way the underlying legal dispute with respect to whether the covenant at issue run with the land. (*Id.* at 7-8.)

11. On May 11, 2016, this Court issued the Rejection Order [Dkt. No. 1082], granting the Debtor's Motion "as set forth in the [March 8] Bench Ruling." (Rejection Order at 2.)

12. On March 18, 2016, the parties separately initiated an Adversary Proceeding relating to these same agreements. On May 3, 2016, the Court issued its Adversary Decision [Adversary Proceeding Dkt. No. 20]. The Court held that the covenants created by the parties' agreements did not run with the land, and incorporated its non-binding reasoning from the Rejection Decision. (Adversary Decision at 2.) The Court acknowledged that there are unsettled aspects of Texas law (*see, e.g.*, Rejection Decision at 12), but the Court did not resolve any of those issues. Rather, the Court considered the alternative requirements and tests under Texas law and found that none were met. (*See, e.g.*, Rejection Decision at 12-14 (considering horizontal privity because "[n]either Nordheim nor HPIP has identified any governing authority that has rejected the horizontal privity requirement," but finding it did not exist); *id.* at 14 (applying both possible tests for the "touch and concern" prong, but finding that "[t]he covenants at issue here do not satisfy either test"); Adversary Decision at 15 (holding that "without concluding whether or not horizontal privity of estate is indeed a requirement under Texas law, . . . horizontal privity does not exist between Sabine and Nordheim or between Sabine and HPIP").)

13. The Court repeatedly based its Adversary Decision on case-specific factors, focusing on the specific language of the parties' agreements. (*See*, *e.g.*, Adversary Decision at 9 ("Here, ... *the terms of the Nordheim Agreements* ... do not support an interpretation of those agreements as relating to minerals in the ground, but instead include provisions to the contrary ....") (emphasis added); *id.* at 12 ("*[T]hese facts* do not fit within the traditional paradigm for horizontal privity of estate ....") (emphasis added); *id.* at 14 ("This argument is premised on a

6

mischaracterization of *the Nordheim agreements* ...."); *id.* ("[T]he cases on which Nordheim relies ... are inapplicable to *the present facts*[.]") (emphasis added).)

14.     On May 11, 2016, this Court entered a Final Order in the Adversary Proceeding [Adversary Proceeding Dkt. No. 22] granting summary judgment "as set forth in the Summary Judgment Ruling." (5/11/16 Order on Debtors' Mot. for Summ. J. and Nordheim's Mot. for J. on the Pleadings, Adversary Proceeding Dkt. No. 22, at 2 (the "<u>Final Order</u>").)

15.     On May 13, 2016, Nordheim filed a Notice of Appeal [Dkt. No. 1098], appealing the Rejection Decision and Rejection Order. That same day, Nordheim filed a Notice of Appeal in the Adversary Proceeding [Adversary Proceeding Dkt. No. 24], appealing the Court's Adversary Decision and Final Order. On May 24, 2016, HPIP filed a Notice of Appeal [Dkt. No. 1142], appealing the Rejection Order [Dkt. No. 1082], the Court's Order on Debtor's Motion for Summary Judgment and HPIP's Motion for Judgment on the Pleadings [Dkt. No. 1083], and the Adversary Decision with respect to HPIP [Adversary Proceeding Dkt. No. 23].

**Objection**

**I.     28 U.S.C. § 158(d)(2) Permits Direct Appeal Only In Exceptional Circumstances.**

16.     "[T]he purposes underlying 28 U.S.C. § 158(d)(2)" make clear that "direct certification of appeal" is "a procedural remedy reserved for exceptional circumstances in which guidance of the circuit court of appeals is necessary." *Zewdie*, 2015 WL 6007410, at *1. Accordingly, 28 U.S.C. § 158(d)(2) authorizes a direct appeal of an order of a bankruptcy court only in the following narrow circumstances:

> (i) the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;
>
> (ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or

7

>   (iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken.

28 U.S.C. § 158(d)(2); *see also In re General Motors Corp.*, 409 B.R. 24, 26-27 (Bankr. S.D.N.Y. 2009) (denying certification and noting that the Second Circuit has explained that "[t]he focus of [§ 158(d)(2)] is explicit: on appeals that raise controlling questions of law, concern matters of public importance, and arise under circumstances where a prompt, determinative ruling might avoid needless litigation") (quoting *Weber*, 484 F.3d at 158).

17.   Nordheim asserts that this Court should certify a direct appeal because the Rejection Order involves (1) "a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States," or (2) "a matter of public importance." (Pet. ¶ 1.) However, as set forth below, Nordheim's arguments are based on a flawed characterization of this Court's orders and fail to identify any issue of public importance. Because this appeal does not present the exceptional circumstances contemplated by Congress for a direct appeal, this Court should deny the Petition.

## II.   Certification Is Not Appropriate Because The Court's Rejection Order Is Based on Controlling Precedent.

18.   This Court's Rejection Order is not an exceptional circumstance meriting direct certification because the Court's decision was based on the application of well-settled law relating to the business judgment rule. As a plain textual matter, the direct-appeal statute applies only to unsettled issues of ***federal***, not ***state*** law: it addresses the absence of a "controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States," not a state supreme court. 28 U.S.C. § 158(d)(2)(A)(i). The reason for that wording is no mystery— as the Second Circuit has explained, Congress enacted the statute to address "the paucity of settled ***bankruptcy-law*** precedent." *Weber*, 484 F.3d at 158 (emphasis added). "Courts have interpreted the 'controlling precedent' prong of 28 U.S.C. § 158(d)(2)(A)(i) to require that there

8

be 'no governing law on the issue before the court.'" *In re Nortel Networks Corp.*, No. 09-10138, 2010 WL 1172642, at *1 (Bankr. D. Del. Mar. 18, 2010) (citations omitted). "Simply disputing the application of these [decisions] to the facts in the case at bar does not satisfy [28 U.S.C. § 158(d)(2)(A)(i)]." *Faulkner v. Kornman*, No. 10-301, 2012 WL 293230, at *3 (Bankr. S.D. Tex. Jan. 30, 2012) (quotations and citations omitted) (alterations in original); *see also Mark IV Indus., Inc. v. New Mexico Env't Dep't*, 452 B.R. 385, 389 (Bankr. S.D.N.Y. 2011) (holding that a direct appeal was not appropriate where there was "a controlling decision in this circuit governing the issues on appeal.").

19.     There can be no dispute—and, indeed, Nordheim ***does not dispute***—that the Court relied on controlling law in determining that "the decision to reject the Nordheim Agreements and HPIP Agreements is a reasonable exercise of the Debtor's business judgment." (Rejection Decision at 18.) Certification for direct appeal is thus not appropriate. *See, e.g.*, *Faulkner*, 2012 WL 293230, at *3 (Bankr. S.D. Tex. Jan. 30, 2012) (finding that "[t]his question is inappropriate for certification because controlling decisions exist"); *In re Nortel Networks Corp.*, 2010 WL 1172642, at *1 (holding certification was not authorized where "[t]here is an abundance of controlling law on the controlling legal issue"); *General Motors*, 409 B.R. at 28 (denying certification where there was "a controlling judgment issued by the Second Circuit").

**III.    Certification Is Not Appropriate Because the Court's Rejection Order and Final Order Do Not Involve Pure Legal Questions, Nor Do They Resolve Unsettled Questions of Texas Law.**

20.     Perhaps recognizing that the Court's Rejection Order does not present the "exceptional circumstances" set forth in 28 U.S.C. § 158(d)(2), Nordheim mischaracterizes the Court's Rejection Order, claiming that it "turn[ed] on novel questions of law" that were "adhered to ... in its subsequent Adversary Decision." (Pet. ¶ 18.) The Rejection Order, as noted, was based squarely on the business judgment rule—a well-established principle of federal bankruptcy

9

law. To the extent the Court analyzed Texas law in its Rejection Order and Final Order, it did *not* do so in a way that presents pure legal issues for appeal. The Court's analysis depended heavily on the facts of the case, including the contractual language at issue, and the Court did not purport to resolve unsettled issues of Texas law. As such, this decision is not an exceptional circumstance appropriate for a direct appeal.

21.     "The Second Circuit has instructed that direct appeal is appropriate for cases involving 'question[s] of law not heavily dependent on the particular facts of a case[.]'" *Mark IV*, 452 B.R. at 388, 390 (quoting *Weber*, 484 F.3d at 158) (alternations in original) (denying certification where the issue "involve[d] mixed questions of law and fact, rather than pure questions of law appropriate for direct appeal"). This view is consistent with that of "many courts" that have held that decisions dependent on case-specific factual findings "are generally not suitable for immediate appeal under § 158(d)(2)." *WestLB AG v. Kelley*, 514 B.R. 287, 294 (Bankr. D. Minn 2014); *see also In re Dutkiewicz*, 403 B.R. 472, 475 (B.A.P. 6th Cir. 2009) (denying certification because, "[w]hile there may indeed be no controlling decision of the Sixth Circuit or the Supreme Court ..., the issue in this appeal is not purely a question of law"); *In re Tribune Co.*, 477 B.R. 465, 472 (Bankr. D. Del. 2012) (finding that "[t]he issue concerning how this Court measured materiality is not a pure legal issue; it is not appropriate for direct appeal"); *In re Am. Home Mortgage Inv. Corp.*, 408 B.R. 42, 44 (Bankr. D. Del. 2009) (holding that "those issues that are specifically linked to the Bankruptcy Court's decision are, in the Court's view at this juncture, mixed questions that implicate the particular circumstances of this case, and as such, they are not pure legal questions warranting direct certification").

22.     Moreover, courts are particularly wary of certifying direct appeals where the appeal relates to the application of state law to the particular facts and circumstances of the case.

10

*See, e.g.*, *Tribune*, 477 B.R. at 472 (holding that "[i]nterpretation of the PHONES indenture requires application of state law and is not appropriate for direct appeal to the Third Circuit"); *Am. Home Mortgage.*, 408 B.R. at 44 (noting that "the issues identified for appeal appear to relate to a direct application of New York state law and/or certain provisions of the Bankruptcy Code ... to the facts and circumstances present here" and holding that "[i]n these circumstances, the Court cannot conclude that certification is warranted."); *In re 15375 Memorial Corp.*, No. 06-10859, 2008 WL 2698678, at *1 (D. Del. July 3, 2008) (holding that "the question of whether Santa Fe maintains a corporate existence sufficient to be an eligible chapter 11 debtor ... involves the application of state law," and thus "[t]his is not a legal issue appealable to the Third Circuit").

23.   As set forth above, the Court's Rejection Order and the Adversary Proceeding's Final Order are "heavily dependent on the particular facts of [the] case[.]" *Weber*, 484 F.3d at 158. This truth is readily evident in Nordheim's own "Questions Presented On Appeal," which necessarily focus on the "covenants in the [parties'] Gathering Agreement and Condensate Agreement." (*See* Pet. ¶ 15 ("Whether, under Texas law, the debtor's covenants in the Gathering Agreement and Condensate Agreement ... are real covenants that run with the land[.]"; "Whether, under Texas law, the covenants in the Gathering Agreement and Condensate Agreement create equitable servitudes that run with the land[.]").) This Court's decision permitting Sabine to reject its agreements, as commentators have recognized, involves "a narrow [legal issue] that **hinges on the Agreement's language**." Kyung S. Lee, Adam L. Rosen & William Hotze, *Rejection of Oil and Gas Contracts Can Only Go So Far*, Law360 (Mar. 9, 2016) (emphasis added), *available at* http://www.law360.com/articles/768955/rejection-of-oil-and-gas-contracts-can-only-go-so-far.

11

24. Furthermore, because of the fact-specific nature of the Court's inquiry, the Court's orders did not resolve unsettled questions of Texas law. The Court did not purport to determine the proper construction of Texas law nor did it attempt to divine what the Texas Supreme Court would hold on any of the issues. Rather, the Court considered the possible requirements and tests under Texas law and held, based on the facts of this case, that none was satisfied. (*See, e.g.*, Rejection Decision at 12-14; Adversary Decision at 15.) The Court of Appeals could easily do the same, further underscoring the conclusion that a direct appeal is inappropriate in these circumstances. *See*, *e.g.*, *Zewdie*, 2015 WL 6007410, at *1 (holding that "direct certification of appeal" is "a procedural remedy reserved for exceptional circumstances in which guidance of the circuit court of appeals is necessary"). This Court should not certify a direct appeal because the Court's decision to permit Sabine to reject its agreements is based on established principles of bankruptcy law, and its decisions concerning Texas law, to the extent it reached any such decisions, are case-specific.

**IV.    This Case Should Not Be Certified for Direct Appeal Because It Does Not Involve a Matter of Public Importance.**

25. This case does not "involve[] a matter of public importance," as that requirement from 28 U.S.C. § 158(d)(2) has been interpreted and applied by courts in the Second Circuit. Rather, this Court's decisions involve disputes between private parties—Nordheim and Sabine, and HPIP and Sabine—about monetary damages under their agreements. Such disputes, between private parties over their contracts, are not matters of public importance.

26. Courts have interpreted the "public importance" prong of 28 U.S.C. § 158(d)(2) narrowly. *See*, *e.g.*, *In re Nortel Networks Corp.*, 2010 WL 1172642, at *2. "'[P]ublic importance' is a relative thing, and it doesn't necessarily mean what a litigant considers to be important." *General Motors*, 409 B.R. at 28. To determine whether a decision actually involves

12

a matter of public importance, courts do not assess the decision's impact on the parties' well-beings or even the industry in which those parties operate; rather, the inquiry in this Circuit focuses on whether the decision "'involves *a question of law*'" that "'involves a matter of public importance.'" *Id.*

27. In general, matters that focus on questions of "statutory interpretation and common law analysis—as contrasted, for example, to constitutional issues," are not publicly important. *Id.* Matters of public importance must advance the development of the law to an unusual degree, or impact the public at large. *Mark IV*, 452 B.R. at 388-89. As a result, and as relevant here, "[a]n appeal that impacts only the parties, and not the public at large, is not a matter of public importance." *Id.* at 389 (internal quotation omitted).

28. The Court's decision to allow Sabine to reject its contracts with Nordheim and HPIP—notwithstanding Nordheim's contrary representations in its Petition—is limited to the Court's examination of facts specific to this case and the parties' contracts, as set forth above. It is precisely the type of "common-law analysis"—as opposed to decisions about federal constitutional or statutory issues—that other courts in this Circuit have deemed *not* to constitute matters of public importance. *General Motors*, 409 B.R. at 28. The Second Circuit has stated unequivocally that decisions, like this one, that are dependent on case-specific factors—as opposed to pure questions of law—are poor candidates for direct appeal. *See*, *e.g.*, *Weber*, 484 F.3d at 158 ("Congress believed direct appeal would be most appropriate where we are called upon to resolve a question of law not heavily dependent on the particular facts of a case . . . ."). The Court's decision is not a matter of public importance. *See Mark IV*, 452 B.R. at 388-89.

29. The fact that the Second Circuit has, on multiple occasions, already considered the contours of the so-called "business judgment" test for rejecting contracts in bankruptcy

13

further underscores the conclusion that this case does not carry the kind of "public importance" required for a direct appeal.

30. Nordheim tries desperately in its Petition to re-cast the Court's decision about the reasonableness of Sabine's actions concerning its contracts as a referendum on Texas property law and all contracts of similarly-situated parties in the oil and gas industry. Yet, this Court did not broadly "allow[] producers like Sabine to reject dedication covenants that are vital to the midstream industry" (Pet. ¶ 36); rather, it allowed Sabine to reject its agreements with Nordheim and HPIP based on the specific language of and facts surrounding those agreements. Nowhere did the Court purport to expand its holdings beyond the facts, circumstances, and contracts in this case.

31. Rather than focus on the Court's actual analysis, Nordheim cites to a series of newspaper articles for the apparent proposition that because the Court's opinion *could* have an impact broader than this case, it *must* be a matter of public importance. (Pet. ¶ 37.) That proposition is flawed for at least three reasons:

32. *First*, Nordheim's citation to news sources fails to include sources in which the case-specific nature of the Court's decision is actually recognized. *See*, *e.g.*, Lee, Rosen & Hotze, *Rejection of Oil and Gas Contracts Can Only Go So Far*, Law360 (noting that "[i]n Sabine, the underlying Texas state law issue is a narrow one that hinges on the Agreement's language").

33. *Second*, Nordheim has not cited to any judicial decisions, let alone a large number of decisions, in which a court permitted a party to reject its contracts because of the Court's decision in this case, which is not surprising given the fact-specific nature of the Court's

14

analysis. There is no real evidence of any impact to the "public at large," as courts in this Circuit require. *Mark IV*, 452 B.R. at 390. The impact Nordheim alleges is at best speculative.

34. ***Third***, even if the consequences of the Court's decision were as Nordheim suggests, the "public importance" inquiry in this Circuit does not focus on the impact of a decision on a party's well-being or even the well-being of others in the industry; the focus is on the public importance of the *question of law* at issue, and as noted, a contract dispute between private parties is not a matter of public importance. Similarly, the Court's application of Texas legal principles to the facts and contractual language specific to Sabine's disputes with Nordheim and HPIP are not matters of public importance.

35. Nordheim's Petition might give the impression that if no direct appeal is granted, it will have no opportunity to challenge this Court's decision permitting Sabine to reject its contracts. That is, of course, not true. As the Second Circuit has stated, "We must ... bear in mind that ... , even without certification, the parties will have an opportunity to appeal both to the district court and to this court before the termination of the ... proceeding." *Weber*, 484 F.3d at 161.

36. The merits of the standard appellate process should not be overlooked:

> [A]lthough Congress emphasized the importance of our expeditious resolution of bankruptcy cases, it did not wish us to privilege speed over other goals; indeed, speed is not necessarily compatible with our ultimate objective-answering questions wisely and well. In many cases involving unsettled areas of bankruptcy law, review by the district court would be most helpful. Courts of appeals benefit immensely from reviewing the efforts of the district court to resolve such questions. Permitting direct appeal too readily might impede the development of a coherent body of bankruptcy case-law.

*Weber*, 484 F.3d at 160.

37. In addition, any gain in speed from a direct appeal should not be overestimated. Where, as here, the inquiry is fact-specific and the issues highly contested, there is no reason to

15

think that the direct appeal process would necessarily result in a materially faster resolution of the dispute. *See Mark IV*, 452 B.R. at 389 (recognizing that "since district courts tend to resolve bankruptcy appeals faster than the courts of appeals," any "cost in speed of permitting district court review will likely be small").

38. Likewise, Nordheim's ultimate plan to seek certification to the Texas Supreme Court is highly speculative and contingent. In particular, it requires three consecutive discretionary decisions to be made in its favor if this Court were even to certify a direct appeal. *First*, the Second Circuit must accept the direct appeal, which is not required by the statute—a fact that Nordheim concedes (Pet. ¶ 16). *See* 28 U.S.C. § 158(d)(2)(A). *Second*, the Second Circuit must agree to certify the state-law questions to the Texas Supreme Court. *See* 2d Cir. R. 27.2 ("If state law permits, the court *may* certify a question of state law to that state's highest court.") (emphasis added). In the vast majority of cases in which the Second Circuit is requested to certify a question of state law to a state Supreme Court, the court declines to do so. *See*, *e.g.*, *Windsor v. United States*, 699 F.3d 169, 177 (2d Cir. 2012) ("[W]e may 'predict' what the state's law is … We decline to certify."); *McCarthy v. Olin Corp.*, 119 F.3d 148, 151 ("[W]e decline to grant certification and affirm the judgment of the district court."). And *third*, the Texas Supreme Court must accept the certified questions. *See* Tex. R. App. P. 58.1 ("The Supreme Court of Texas *may* answer questions of law certified to it by any federal appellate court if the certifying court is presented with determinative questions of Texas law having no controlling Supreme Court precedent. *The Supreme Court may decline to answer the questions certified to it.*") (emphasis added).

16

39.     The Court should not certify a direct appeal here because the contractual dispute between the parties does not present matters of public importance as that term has been narrowly defined in the Second Circuit.

## **Conclusion**

Based on the weight of settled authority and its application to the Petition as described above, the Debtors respectfully submit that Nordheim and HPIP have failed to meet their burden to show that this is one of the exceptional circumstances warranting direct appeal. Accordingly, the Court should deny the Petition.

| | |
|---|---|
| Dated: May 25, 2016<br>New York, New York | */s/ Ryan Blaine Bennett*<br>Paul M. Basta, P.C.<br>Jonathan S. Henes, P.C.<br>Christopher Marcus, P.C.<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:  (212) 446-4800<br>Facsimile:  (212) 446-4900 |

- and -

James H.M. Sprayregen, P.C.
Ryan Blaine Bennett (admitted *pro hac vice*)
Brad Weiland (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200

- and -

Mark McKane, P.C. (*pro hac vice admission pending*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
555 California Street
San Francisco, California 94104
Telephone:  (415) 439-1400
Facsimile:  (415) 439-1500

- and -

Anna Rotman, P.C. (*pro hac vice admission pending*)
Nicolas Thompson (*pro hac vice admission pending*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
600 Travis Street
Houston, Texas 77002
Telephone:  (713) 835-3600
Facsimile:  (713) 835-3601

*Counsel to the Debtors and Debtors in Possession*